UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA           :

VS.                                :           NO. 3:00CR94 (CFD)

THOMAS ALI DAVIS                   :           APRIL 17, 2008

### SENTENCING MEMORANDUM OF LAW

**I.   Background**

On March 21, 2001, Mr. Davis appeared before this court, after having pled guilty to Being a Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1). At that time, the defendant was sentenced to 53 months imprisonment to be followed by three years of supervised release.

On March 4, 2005, the defendant was released from incarceration and began the period of the supervised release. On October 15, 2007, the defendant was arrested by the Manchester police and charged with possession of cocaine and sale of cocaine. Ultimately, he was charged with six separate cocaine sale violations in the Superior Court in Manchester, and these sales took place between August and October 2007. The underlying facts of these cases were basically similar and involved the defendant selling small amounts of crack cocaine to an undercover police officer for approximately $40. In the probationer's "Report of Violation of Supervised Release", the police report indicates he sold .66 grams of crack cocaine. Presumably, this is the gross amount and the net amount, after removal of the packaging, would be even less.

On February 21, 2008, the defendant received concurrent sentences of 45 months which were to be followed by 4 years of special parole in accordance with Connecticut General Statutes §54-125e. Based upon these criminal convictions, to which the defendant has pled guilty, he does not contest the fact that he has violated at least one of the conditions of supervised release.

## II.   Law

The Sentencing Commission has never promulgated guidelines for the appropriate sentence to impose for revocation of supervised release or probation. Ch. 7, U.S.S.G. Instead, the Commission has relied upon policy statements in Chapter 7 with the expectation that at some point in the future, guidelines will be issued. These policy statements, even before Booker, never had any binding effect, and, thus, the Booker decision had little impact upon the applicability to individual cases before federal District Courts. United States v. Booker, 543 U. S. 220 (2005); United States v. Anderson, 15 F.3d 278, 285-286 (2d Cir. 1990); United States v. McNeil, 415 F.3d 273, 276 (2d Cir. 2005).

Thus, the process which the court should engage in in determining a possible sentence for violation of supervised release cannot be found in the sentencing tables but in the Revocation of Supervised Release table of Chapter 7. §7B1.4. As the probation officer correctly points out in her report, a very simple calculation of Mr. Davis' Manchester conviction and his criminal history as set forth in the pre-sentence report shows that he falls in Criminal History Category IV and that the Manchester

conviction constitutes a "Grade A Violation". Thus, the guidelines policy statement would indicate a sentence of between 24 and 30 months. By statute, the defendant, however, cannot receive a sentence after a violation in excess of 24 months. 18 U. S. C. §3583(e). The court also may impose an additional period of supervised release but is not required to do so. 18 U. S. C. §3583(c).

The defendant seeks imposition of sentence for his violation of supervised release considerably below the policy statement category of 7B1.4 and also, requests that this sentence be run concurrently with the March 2008 sentence of 45 months imposed by the Superior Court in Manchester. The defendant only falls into Criminal History Category IV because the state court, prior to his initial sentence before this court in 2001, compelled a guilty plea and forced the defendant's criminal history to increase from Criminal History Category III to CH IV. This argument is eloquently and logically set forth in the defendant's memorandum of law submitted to this court before the original sentence in 2001 by his then attorney, Assistant Federal Defender, Gary Weinberger. Defendant's Motion for Downward Departure, dated February 27, 2001. This defendant will not belabor this point any further. But the effect of an atypically increased criminal history impacts this defendant once again, not from the sentencing table, but, this time, from the Revocation Table of Chapter 7. Thus, if the court were to treat this as a Criminal History III and not C.H. IV, that table would call for a sentence of 18 to 24 months and not 24 to 30 months.

Secondly, the court is aware that in addition to the 45 months which the

3

Superior Court imposed, it also required that upon Mr. Davis' release from state custody he be subject to 4 years of special parole. C.G.S. §54-125(e). This statute, unlike regular parole or probation, involves intense supervision in a situation where the defendant can be easily returned to state prison for the slightest violation. Thus, there will be restrictions upon the defendant's life after completion of the state's sentence which provide adequate punishment and deterrence and meet the goals that this court should be concerned with to compel Mr. Davis to lead a drug free, law abiding life as well as to impose adequate punishment.

The court should take into consideration that this petition to revoke Mr. Davis' supervised release comes almost on the eve of the completion of his court supervision. The probation report indicates that on March 8, 2008, Mr. Davis would have completed supervised release. Had his criminal activity in Manchester occurred just five or six months later, this court would have no authority to impose further incarceration upon Mr. Davis. It is readily admitted that Mr. Davis committed other violations of supervised release for which he was not incarcerated during the first three years of supervision by Ms. Amato. These other violations indicate an ongoing and probably never ending struggle with drug addiction. They differ qualitatively and in seriousness from the violations which occurred in October of 2007. But, that being said, it cannot be denied that Mr. Davis was near the end of his supervised release period when he unfortunately committed acts which now expose him to additional, substantial periods of incarceration. This case, thus, differs from the individual who

4

commits serious criminal acts after a few months of release from prison.

The paramount concern of the defendant, of course, is whether or not this court will run its sentence concurrently or consecutively with the state sentence of 45 months.  Chapter 7 of the policy statement for violation of supervised release in the guideline manual states "it is the policy of the Commission that the sanction imposed upon revocation is to be served consecutively to any term of imprisonment imposed for any conduct that is the basis of the revocation".  Intro. Com., Part B, Ch. 7, Guidelines Manual.  The policy is further reinforced by a policy statement which specifically says "such sentence shall be ordered to be served consecutively to any sentence of imprisonment that defendant is serving,...".  §7B1.3(f).  It bears repeating that these are not mandatory guidelines, but simply advisory policy statements.  Defense counsel can find no case where a court ever ran a violation of supervised release sentence concurrently and an appellate court deemed such a decision "unreasonable".  In light of Booker, supra, and Kimbrough v. United States, 1275 S. Ct. 2933 (2007), the force of this policy statement is more questionable and uncertain than ever.

The court does have statutory guidance, however, in making the determination how the sentence which it will impose should run.  Whether or not a sentence should be run consecutively or concurrently should be decided by the factors of §3553(a) of Title 18. U.S.C.A. §3584(b).  Thus, these statutes and not the policy statements should be controlling of this court's decision.  As previously stated, the court is never

5

obligated to follow any of the policy statements in Chapter 7 of the Guidelines. <u>United States v. Anderson</u>, supra, 285-286 (2d Cir. 1994). There is further legislative guidance as to what this court should consider when imposing sentence upon a finding of violation of supervised release. 18 U. S. C. §3583(e). This section, §3583(e), delineates those sub-sections of §3553(a) which the court must consider. Omitted from this list is §3553(a)(2)(A) which compels the court to consider the seriousness of the offense and the need to provide just punishment, and §3553(a)(3) "the kinds of sentences available". Although the court is not required to consider these two sections in determining the appropriate sentence and whether or not it is to run consecutively or concurrently, it certainly has discretion to do so. <u>United States v. Lewis</u>, 498 F.3d 393 (6th Cir. 2007), <u>United States v. Williams</u>, 443 F.3d 35, 47-48 (2d Cir. 2007). For this reason, the defendant will address all the various prongs of the often cited sentencing statute of Title 18, §3553(a), to assist the court in determining whether its sentence should be run consecutively, concurrently, or partially concurrently.

A.  <u>**§3553(a)(1) History and Characteristics of the Defendant**</u>

The defendant is 30 years of age and has one prior conviction for sale of narcotics and a number of convictions for possession. The pre-sentence report and the report for violation of supervised release are replete with indications of a serious drug addiction which defendant has made efforts to conquer but simply has been unable to fully extricate himself from an unquenchable desire for drugs. On the other

6

hand, other "characteristics" of the defendant show a healthy work ethic and an ability to support himself and his family at laborious jobs that many people would eschew. Marsha Lopisi, the general manager at Pumpernickel Express, wrote to the court on October 25, 2007, and described Mr. Davis as "reliable and a hard worker". Though he has worked at Pumpernickel Express for over a year on the loading dock, and she describes him as "well-liked there because of his hard work ethic and his friendly personality". Mr. Blassingame in a letter of April 4, 2007, states that he has known Mr. Davis since 1995 and described how Mr. Davis has given him advice which has been helpful over the years during "rough times". He described Mr. Davis' hard work as a loader at Bob's Discount Furniture in Manchester. Another supervisor at Pumpernickel Express, Robert DeNeve, in a letter of March 21, 2007, described Mr. Davis as a "model employee whom we rely on day in, day out. The way he does his job is described as making him "irreplaceable". Finally, in a letter of April 17, 2007, Mr. Smiley of Keystone Automotive Industries in Manchester described Mr. Davis as a "very generous, giving but also humble person". He also described Mr. Davis as a "wonderful father to his eight year old daughter, Tajanae". Unquestionably, the sale of cocaine does not reflect positively on his character. On the other hand, the scenarios on those charges is contemplated and taken care by the Revocation Tables. The aforementioned information concerning his character, which is not considered by the Tables, should lessen the impact and severity of the sentence which the court should impose.

7

**B.     The need to reflect the seriousness of the offense and promote respect for the law, §3553(a)(2)(A).**

A sentence of 45 months for the sale of small amounts of cocaine to users is adequate to "reflect the seriousness of the offense". In the words of the sentencing statute, it is "sufficient, but not greater than necessary, to comply with the purposes" set forth in paragraph, 2 of 18 U. S. C. §3553(a).

**C.     Adequately deter criminal conduct, Title 18 U. S. C. §3553(a)(2)(B).**

The sentence of 45 months coupled by 4 years of special parole is an extremely long sentence. It is impossible to say what length of time a person must be incarcerated to deter the general public from similar crimes. It is hard to imagine that adding a few more years to this sentence would be any more of a deterrence than the 45 months plus special parole already imposed.

**D.     Protect the public from further crimes of Mr. Davis. Section 3553(a)(C).**

The public is adequately protected by the special parole conditions that will be hanging over Mr. Davis' head for four years after his release from the lengthy state sentence. As stated, the state can and will return Mr. Davis to state custody if he so much as has one dirty urine. In this way, the public is adequately protected for a lengthy period of time.

**E.     Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U. S. C. §3553(a)(2)(D).**

Mr. Davis has shown an ability to work efficiently and for protracted period of

8

times as a manual laborer on a loading dock. While this is not a skilled job, it requires perservance and mental attitude which many defendants do not have. With only a ninth grade education, see PSR, not much more is required. He does, of course, need drug counseling, but that can be provided more effectively on the outside than in an added 24 months of incarceration after going through the Connecticut penal system.

F.    **"The kinds of sentence and the sentencing range establish..."**

For the offense which Mr. Davis has committed, violation of supervised release, there is no mandatory minimum. The court has the option of running this sentence concurrently, consecutively, or partially concurrently to the undischarged state sentence. §5G1.3(c) and Background.

III.    **Conclusion**

For all of the above reasons, the defendant, Thomas Davis, respectfully requests that his sentence be substantially less than the 24 month period of imprisonment recommended by the policy statements of Chapter 7 and that this sentence be run concurrently with the sentence that he is now serving and which was imposed by the Superior Court in Manchester, Connecticut, in February 2008.

Respectfully submitted,
DEFENDANT, THOMAS ALI DAVIS

By: _____
Richard S. Cramer
250 Hudson Street
Hartford, CT 06106
(860) 560-7704
Federal Bar No. ct00016
Email: cramer@snet.net

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing was hand-delivered and emailed this 17th day of April 2008 to:

Jonathan Freimann
Assistant U. S. Attorney
157 Church Street
New Haven, CT 06510

Jennifer Amato
U. S. Probation
450 Main Street
Hartford, CT 06103

Gerald M. Klein, Esq.
21 Oak Street
Hartford, CT 06106

_____
Richard S. Cramer

10